FILED
DEC 29 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CAMICO MUTUAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CITIZENS BANK; NAVARRO, ELISCO & O'CONNELL; TERRANCE NAVARRO; and LAURENCE ELISCO <br><br> Defendants. | No. 05C 7270 <br><br> JUDGE CONLON <br><br> MAGISTRATE JUDGE ASHMAN |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, CAMICO Mutual Insurance Company, by and through its attorneys, and for its Complaint for Declaratory Judgment against Defendants, Citizens Bank, Navarro, Elisco & O'Connell, Terrance Navarro, and Laurence Elisco, states as follows:

### VENUE AND JURISDICTION

1.  Jurisdiction in this matter is based on 29 U.S.C. §1367 and 28 U.S.C. § 1332(a)(1).

2.  The amount in controversy exceeds $75,000.

3.  Venue is appropriate under 28 U.S.C. § 1391 because certain defendants reside in this judicial district, and the events or omissions giving rise to the claim occurred, at least in part, in this judicial district.

### PARTIES

4.  CAMICO Mutual Insurance Company ("CAMICO") is a California corporation with its principal place of business in California.

5. Citizens Bank is a Michigan banking corporation, with its principal place of business in Michigan.

6. Navarro, Elisco & O'Connell is an Illinois partnership engaged in the performance of accounting services in Illinois. Terrance Navarro and Laurence Elisco and individual partners in Navarro, Elisco & O'Connell, who reside in Illinois. Navarro, Elisco & O'Connell, and Terrance Navarro and Laurence Elisco are hereinafter collectively referred to as "Navarro, Elisco & O'Connell."

## COUNT I

## DECLARATORY JUDGMENT

7. CAMICO realleges and restates paragraphs 1-6 above, as though fully set forth herein as paragraph 7 of this Count I.

8. CAMICO issued to Navarro, Elisco & O'Connell claims made and reported Accountants Professional Liability Insurance Policy, no. ILL07905, for the policy period of January 1, 2002 to December 31, 2002 ("the Camico Policy"). A true and accurate copy of the Camico Policy is attached hereto as Exhibit A.

9. The CAMICO Policy has limits of liability of $2 million per "*Claim*" and a $4 million "*Policy Aggregate*".

10. Section III, Insuring Agreements, C. Limits of Liability and Deductibles of the Camico Policy contains the following provision concerning the limits of liability:

***

1. Limit of Liability – Per *Claim*

The maximum amount payable by the Company for *Damages* and *Claim Expenses* for each covered *Claim* is the Per *Claim* Limit of Liability as stated in the Declarations. A single per

*Claim* limit of liability applies to a *Multiple Claim*, regardless of the number of claimants, lawsuits, or *Insureds* involved.

\*\*\*

11. The CAMICO Policy defines *Claim* and *Multiple Claim* in Section I. Definitions as follows:

(c) A *Claim* means a demand received by an *Insured* for money or services, and includes the service of suit(s) or a demand for arbitration. A *Claim* also includes a *Multiple Claim*, which is formed by two or more *Claims* arising out of or resulting from a single act, error or omission in the rendering of *Professional Services*, or from related or identical acts, errors or omission in the rendering of *Professional Services*, whether such demands are made: (1) against one or more *Insureds*, (2) by one or more *Persons*, or (3) during one or more *Policy Periods*.

12. In 2002, Navarro, Elisco & O'Connell reported a "*Potential Claim*" against it by Citizens Bank, which "*Claim*" was later made in 2003. According to Citizens Bank, Navarro, Elisco & O'Connell audited financial statements for KMS Energy International, Inc. and its subsidiaries ("KMS") for the years 2000 and 2001. In May 2002, Citizens Bank was provided with the 2000 audited financial statements and a draft of the 2001 audited financial statements as part of KMS' financial records submitted in applying for the loan. Citizens Bank claims that, in reliance upon unqualified audit opinions issued by Navarro, Elisco & O'Connell for 2000 and 2001, Citizens Bank agreed in late May 2002 to extend the loan to KMS. Thereafter, Citizens Bank was provided with the final 2001 audited financial statements which was identical to the draft, and on June 26, 2002, the loan documents were signed. Citizens Bank alleges that Navarro, Elisco & O'Connell failed to detect material misstatements in the KMS financial

3

statements and, had the misstatements been detected, Citizens Bank would not have incurred losses on its loan to KMS.

13. CAMICO asserts that the Citizens Bank claim constitutes "A *Claim*" under the CAMICO Policy, thereby limiting CAMICO'S obligations, if any, to one "per *Claim*" limit of liability. Alternatively, CAMICO asserts that even if the Citizens Bank claim were deemed to be more than one "*Claim*," the claims would constitute a "*Multiple Claim*" as defined in the CAMICO Policy, thereby limiting CAMICO'S obligations, if any, to one "per *Claim*" limit of liability.

14. Citizens Bank asserts that its claim constitutes more than one "*Claim*" under the CAMICO Policy, thereby invoking the "*Policy Aggregate*", instead of the per "*Claim*" limit of liability. As a result, an actual and immediate controversy exists between the parties.

WHEREFORE, Plaintiff, CAMICO Mutual Insurance Company, prays that this Court enter judgment in its favor and against Defendants, and that the court further issue an order declaring that one "per *Claim*" limit of liability, if any, is applicable to the claim asserted against Navarro, Elisco & O'Connell, Terrance Navarro and Laurence Elisco by Citizens Bank.

Respectfully Submitted:

**CAMICO MUTUAL INSURANCE COMPANY**

By: _____
One of Its Attorneys

Jeffrey A. Goldwater, Esq.
Michelle M. Bracke, Esq.
BOLLINGER, RUBERRY & GARVEY
500 West Madison Street, Suite 2300
Chicago, Illinois 60661-2511
(312) 466-8000, (312) 466-8001 facsimile

4

CAMICO Mutual Insurance Company

DECLARATIONS

Policy No: ILL07905

Effective Date:     January 01, 2002    at 12:00 A.M.
                                        Standard time.
Expiration Date:    December 31, 2002   at 11:59 P.M.
                                        Standard time.
Retroactive Date:   November 01, 1999

Item 1 - Named Insured:
    Navarro Elisco & O'Connell, LLC

Item 2 - Mailing Address:      952 Skokie Blvd, Suite 250
                               Northbrook, IL 60062

Item 3 - Limit of Liability:   $2,000,000      Per Claim
                               $4,000,000      Policy Aggregate.

Item 4 - Deductibles:              $2,500      Per Claim
                           Not Applicable      Policy Aggregate.

Item 5 - Total Premium         $    4,513.00

Item 6 - The policy consists of this Declarations page (PL-1001-A),
        the Accountants Professional Liability Insurance Policy
        (PL-1000-A), the applicable State Endorsement(s) and the
        following named endorsements:

   1 PL-1016-A  SPECIAL EXCLUSION ENDORSEMENT
   2 PL-1002-A  ADDITIONAL NAME INSURED ENDORSEMENT
   3 PL-1009-A  EXCLUSION FOR SERVICES RENDERED IN ANOTHER CAPACITY
   4 PL-1009-A  EXCLUSION FOR SERVICES RENDERED IN ANOTHER CAPACITY

PLEASE READ THESE DECLARATIONS, THE POLICY AND ENDORSEMENTS CAREFULLY.

Countersignature:            _____
                             CAMICO MUTUAL INSURANCE COMPANY

     PL-1001-A                                     (rev. 12/02)


EXHIBIT A
ALL-STATE LEGAL SUPPLY CO.

CAMICO Mutual Insurance Company

SPECIAL EXCLUSION ENDORSEMENT

EFFECTIVE DATE: January 01, 2002  POLICY NUMBER: ILL07905
ENDORSEMENT NUMBER: 1

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE
CAMICO PROFESSIONAL LIABILITY POLICY, PLEASE READ CAREFULLY

This policy does not apply to any Claim
arising out of or in connection with
Professional Services rendered or omitted
to be rendered by Dan O'Connell prior to
January 1, 2001.

All other terms, conditions and exclusions of the policy remain unchanged

Countersignature: _____
CAMICO MUTUAL INSURANCE COMPANY

PL-1016-A  (rev.06/00)

CAMICO Mutual Insurance Company

ADDITIONAL NAME INSURED ENDORSEMENT

EFFECTIVE DATE: January 01, 2002            POLICY NUMBER: ILL07905
ENDORSEMENT NUMBER: 2

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE
CAMICO PROFESSIONAL LIABILITY POLICY, PLEASE READ CAREFULLY

As of the effective date shown above, the Named Insured,
as stated on the Declarations, includes the following
Person(s):

Elan Financial Network


All other terms, conditions and exclusions of the policy remain unchanged


Countersignature: _____
                   CAMICO MUTUAL INSURANCE COMPANY

PL-1002-A                                           (rev.06/00)

CAMICO Mutual Insurance Company

EXCLUSION FOR SERVICES RENDERED IN ANOTHER CAPACITY

EFFECTIVE DATE: January 01, 2002  
ENDORSEMENT NUMBER: 3

POLICY NUMBER: ILL07905

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE
CAMICO PROFESSIONAL LIABILITY POLICY, PLEASE READ CAREFULLY

It is agreed that the following is added to
IV. EXCLUSION, D., INSURED Acting in Another
Capacity:

Life Insurance Agent or Broker

This insurance does not apply to:

CLAIMS in connection with or arising out of the
PROFESSIONAL SERVICES of any PERSON, who is an INSURED,
acting as a trustee, receiver, assignee, administrator,
conservator, executor, or guardian of any other PERSON,
unless named below.

All other terms, conditions and exclusions of the policy remain unchanged

Countersignature: _____
CAMICO MUTUAL INSURANCE COMPANY

PL-1009-A

(rev.06/00)



# CAMICO
MUTUAL INSURANCE COMPANY

Accountants
Professional
Liability
Insurance
Policy

1235 Radio Road
Redwood City
California 94065-1217

(800) 652-1772

Revised 06/00

## NOTICE

THIS INSURANCE POLICY IS A "CLAIMS-MADE AND REPORTED" POLICY. THIS INSURANCE APPLIES ONLY TO *CLAIMS* THAT ARE FIRST MADE AND REPORTED TO THE COMPANY DURING THE *POLICY PERIOD*, OR THAT ARE FIRST MADE AND REPORTED TO THE COMPANY DURING AN *EXTENDED REPORTING COVERAGE* PERIOD, IF PURCHASED.

THIS POLICY DOES NOT COVER PRIOR ACTS UNLESS SPECIFICALLY INCLUDED. THE COMPANY WILL NOT INDEMNIFY OR DEFEND *CLAIMS* ARISING FROM ACTS, ERRORS OR OMISSIONS WHICH OCCURRED PRIOR TO THE POLICY'S *RETROACTIVE DATE*.

THIS POLICY INCLUDES *CLAIMS EXPENSES* IN THE LIMITS OF LIABILITY. THE PAYMENT OF *CLAIMS EXPENSES* REDUCES THE LIMITS OF LIABILITY AVAILABLE TO PAY *DAMAGES* UNLESS PROHIBITED BY APPLICABLE STATE LAW OR AMENDED BY ENDORSEMENT.

THIS POLICY CONTAINS ADDITIONAL RESTRICTIONS ON COVERAGE. PLEASE REVIEW THIS POLICY CAREFULLY, INCLUDING THE DECLARATIONS AND ALL ENDORSEMENTS.

# POLICY TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | DEFINITIONS | | 1 |
| II. | WHO IS AN INSURED | | 2 |
| III. | INSURING AGREEMENTS | | 3 |
| | A. | Coverage for Damages and Reporting Requirements | 3 |
| | B. | Defense and Settlement of Claims | 3 |
| | C. | Limits of Liability and Deductibles | 4 |
| | D. | Policy Territory | 4 |
| IV. | EXCLUSIONS | | 5 |
| V. | INSURED'S RIGHT TO EXTENDED REPORTING COVERAGE | | 5 |
| | A. | Extended Reporting Coverage | 5 |
| | B. | Retirement, Permanent Disability, or Death - Unlimited Period | 6 |
| | C. | Non-Renewal or Cancellation - Three Year Period | 6 |
| | D. | Right of Qualifying Partner to Purchase Extended Reporting Coverage | 6 |
| | E. | Additional Definitions Applicable to This Section | 6 |
| VI. | POLICY CONDITIONS | | 7 |
| | A. | Insured's Duties Upon Notice of Claim or Potential Claim | 7 |
| | B. | Innocent Insured | 7 |
| | C. | Transfer and Assignment of Insured's Rights and Duties | 8 |
| | D. | Legal Action Against the Company | 8 |
| | E. | Other Insurance | 8 |
| | F. | Cancellation or Non-Renewal | 9 |
| | G. | Change in Membership or Name of Firm | 9 |
| | H. | Bankruptcy | 9 |
| | I. | Mutual Policy Provisions: Dividends, Voting, Policy Non-Assessable | 9 |
| | J. | Entire Contract | 9 |

## ACCOUNTANTS PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the *Named Insured's* payment of premium and Deductible(s), and in reliance upon the *Named Insured's* statements made in the original application and all renewal or supplemental applications, all of which are incorporated into this policy by this reference, CAMICO Mutual Insurance Company ("the Company") agrees with the *Named Insured* as follows:

### I. DEFINITIONS

Wherever used in this policy, the words or phrases in *italics* have special meanings:

(a) An *Affiliate* of a specified *Person* means a *person* that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with the *Person* specified.

(b) *Bodily Injury* means bodily injury, sickness, disease, mental illness, emotional distress or humiliation sustained by a person, including death resulting from any of these at any time.

(c) A *Claim* means a demand received by any *Insured* for money or services, and includes the service of suit(s) or a demand for arbitration. A *Claim* also includes a *Multiple Claim*, which is formed by two or more *Claims* arising out of or resulting from a single act, error or omission in the rendering of *Professional Services*, or from related or identical acts, errors or omissions in the rendering of *Professional Services*, whether such demands are made: (1) against one or more *Insureds*, (2) by one or more *Persons*, or (3) during one or more *Policy Periods*.

(d) *Claim Expenses* are the fees charged by an attorney designated by the Company to defend any *Insured*, and all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a *Claim*, if incurred by the Company or by an *Insured* at the Company's request. *Claim Expenses* do not include: (1) salaries of the Company's employees or independent adjusters, or (2) any fees, costs or expenses incurred by an *Insured* without the Company's consent.

(e) *Damages* means a monetary judgment or award, or sums paid in settlement, but does not include: (1) any fine, sanction, penalty, or punitive or exemplary damages; (2) reimbursement of any *Insured's* fees for *Professional Services*; or (3) *Claim Expenses*.

(f) *Defamation* means the publication or utterance of a libel or slander or other defamatory or disparaging material or a publication or utterance in violation of an individual's right of privacy.

(g) *Extended Reporting Coverage* is an optional coverage offered by the Company under the terms and conditions stated in Section V. *Insured's* Right To *Extended Reporting Coverage* of this policy and the *Extended Reporting Coverage* endorsement issued by the Company. *Extended Reporting Coverage* provides a period of time after the end of the *Policy Period* for reporting a *Claim* arising out of any negligent acts, errors or omissions occurring prior to the end of the *Policy Period* and otherwise covered by this policy.

(h) An *Insured* means the *Named Insured* and any *Person* who qualifies as an *Insured* under Section II. Who Is An *Insured*.

(i) The *Named Insured* is the *Person* identified on the Declarations attached to this policy.

(j) A *Person* means any natural person or legal entity.

(k) The *Policy Period* is the period of time which begins on the effective date stated on the Declarations and ends on the renewal, termination, expiration or cancellation of this policy, and specifically excludes any *Extended Reporting Coverage*.

(l) A *Potential Claim* is an event or circumstances that any *Insured* would have a basis to reasonably anticipate may result in a *Claim*.

(m) *Predecessor Firm* is: (i) any firm, some or all of whose partners or shareholders have joined the *Named Insured*, provided such partners or shareholders produced over 50% of the prior firm's annual gross billings and such billings have been assigned to the *Named Insured*, or (ii) any sole proprietor who joined the *Named Insured* and who has assigned over 50% of the billings from the former sole proprietorship to the *Named Insured*.

(n) *Professional Services* are any professional services performed by an *Insured* as long as the fees or commissions, if any, or other benefits from such services inures to the benefit of the *Named Insured*. *Professional Services* also includes any *Insured's* services as a member of a formal accreditation, standards review, or other similar professional board or committee that is related to the accounting profession, including services ordinarily performed or advice given in connection with programs sponsored by the American Institute of Certified Public Accountants or any state society of Certified Public Accountants.

(o) *Property Damage* means physical injury to, conversion of, or destruction of tangible property, including the loss of use of tangible property.

(p) *Related Individual* means the spouse, children, and/or parents of any *Insured*, and any trust or estate of which any of them is a beneficiary.

(q) The *Retroactive Date*, stated in the Declarations, is the earliest date from which this policy provides coverage for *Professional Services*.

## II. WHO IS AN *INSURED*

Each of the following *Persons* is an *Insured*, but only while performing *Professional Services* for the benefit of the *Named Insured* or a *Predecessor Firm* on or after the *Retroactive Date*:

(a) The *Named Insured* identified in the Declarations or in an endorsement.

(b) A current or former owner, partner, shareholder or employee of a *Named Insured*.

(c) Any *Person* who, during the *Policy Period*, becomes an owner, partner, shareholder or employee of a *Named Insured*.

(d) Temporary staff or a contract employee of a *Named Insured*, but only for *Professional Services* performed on behalf of and under the direct supervision of a *Named Insured*.

(e) A *Predecessor Firm*.

(f) A *Person* acquired by or merged with a *Named Insured* during the *Policy Period*, but only for *Professional Services* provided after the acquisition or merger.

(g) The legal representative of an *Insured*, but only to the extent of that *Insured's* rights and duties under this policy.

## III. INSURING AGREEMENTS

### A. Coverage for *Damages* and Reporting Requirements

The Company will pay those sums that an *Insured* becomes legally obligated to pay as *Damages* because of a *Claim* arising out of an *Insured's* negligent act, error or omission in rendering or failing to render *Professional Services* performed after the *Retroactive Date* and before the end of the *Policy Period*. The *Claim* must be first made against the *Insured* and reported to the Company during the same *Policy Period*. An act, error or omission which is continuing in nature shall be deemed to have occurred only on the date on which that act, error or omission began and not on any subsequent date. Related or identical acts, errors or omissions shall be deemed to have occurred on the date that the earliest of those acts, errors or omissions began. A *Multiple Claim* is deemed made and reported to the Company on the date the first of the *Claims* forming the *Multiple Claim* is reported to the Company.

This policy does not cover: (1) any *Claims* reported to any insurer prior to the effective date of the *Policy Period* identified in the policy's Declarations, or (2) any *Claims* arising from circumstances which, prior to the effective date of the *Policy Period*, any *Insured* would have had a basis to reasonably anticipate may result in a *Claim*.

If the *Named Insured* first becomes aware of a *Potential Claim* during the *Policy Period* and provides the Company with written notice as described at Section VI. Policy Conditions, A.1, then any *Claim* that may be made later against an *Insured* arising from those acts, errors or omissions will be deemed reported to the Company on the date the Company received the written notice of the *Potential Claim*.

No *Claim* shall be deemed first made against an *Insured* during the *Policy Period* if any *Insured* reported that *Claim* as a *Claim* or *Potential Claim* to the Company or to any other professional liability insurer, or if that *Claim* or *Potential Claim* was known to any *Insured*, before the effective date of the *Policy Period*. If any *Insured* becomes aware of a *Claim* during the *Policy Period* and reports that *Claim* to the Company within 30 days of the date of expiration of that *Policy Period*, that *Claim* shall be deemed reported to the Company on the last day of that *Policy Period*.

### B. Defense and Settlement of *Claims*

1. The Company has the right and duty to defend and settle *Claims* alleging *Damages*, even if the *Claim* is groundless, false or fraudulent. The Company has the right to appoint counsel and to investigate and negotiate settlement of any *Claim*.

2. The Company will not settle any *Claim* without the *Named Insured's* written consent. If the *Named Insured* withholds its consent to any settlement recommended by the Company and elects to contest a *Claim* or continue the legal proceedings, then the Company's liability for that *Claim* will not exceed: (1) the amount of the recommended settlement plus *Claim Expenses* incurred up to the date the *Named Insured* withheld its consent, or (2) the remaining Limit of Liability, whichever is less.

3. The Company will cease defending and/or paying *Claim Expenses* when the applicable Limit of Liability has been exhausted by payment of *Damages* or *Claim Expenses*.

4. The Company may elect to defend an *Insured* at disciplinary hearings before the state entity responsible for regulating the practice of accountancy when such hearings may relate to a *Claim* or *Potential Claim* against an *Insured*. However, the Company has no duty to indemnify an *Insured* for any monetary assessment or penalty that may be levied against an *Insured* as a result of those hearings.

C.  Limits of Liability and Deductibles

1. Limit of Liability – Per *Claim*

The maximum amount payable by the Company for *Damages* and *Claim Expenses* for each covered *Claim* is the Per *Claim* Limit of Liability as stated in the Declarations. A single Per *Claim* limit of liability applies to a *Multiple Claim*, regardless of the number of claimants, lawsuits, or *Insureds* involved.

2. Limit of Liability – Policy Aggregate

The maximum amount payable by the Company for *Damages* and *Claim Expenses* for all covered *Claims* made and reported during the *Policy Period* is the Limit of Liability: Policy Aggregate, as stated in the Declarations.

3. Deductible – Per *Claim*

The *Named Insured* shall pay a Deductible – Per *Claim*, in the amount stated on the Declarations for *Claim Expenses* and *Damages* resulting from each *Claim*. The *Named Insured* is responsible for reimbursing the Company for the Deductible.

The Company will reimburse the *Named Insured* a portion of the Deductible – Per *Claim* under the following circumstances: (a) when any *Insured* reports a *Potential Claim* to the Company prior to the *Claim* being made against the *Insured*; or (b) when the *Named Insured* agrees to use formal mediation to seek a resolution of a *Claim*. Under either of these circumstances, the Company will reduce the applicable Deductible – Per *Claim* by 50 percent, up to a maximum of $50,000.

4. Deductible – Policy Aggregate

When the *Named Insured* has purchased a Deductible – Policy Aggregate, the maximum amount of Deductible(s) payable by the *Named Insured* with respect to all *Claims* first made against an *Insured* and reported to the Company during the *Policy Period* is the Deductible – Policy Aggregate as stated on the Declarations.

5. Expenses for *Potential Claims*

Any expenses incurred by the Company on behalf of an *Insured* prior to a *Claim* being made are not chargeable against the Deductible – Per *Claim* or Limits of Liability.

6. Reimbursement of the Company

If the Company pays any *Claim Expenses* or *Damages* within the Deductible – Per *Claim* or Deductible – Policy Aggregate or in excess of the applicable Limit of Liability, the *Named Insured* shall reimburse the Company within 30 days of the Company's request. All *Insureds* are jointly and severally liable for reimbursement of these amounts to the Company.

D.  Policy Territory

This insurance applies to *Claims* made anywhere in the world.

## IV. EXCLUSIONS

This policy does not apply to:

(a) **Intentional Misconduct:** Any *Claim* based on or arising out of a dishonest, fraudulent, malicious or criminal act, error or omission of any *Insured*. The Company will defend, but not indemnify, any *Claim* alleging an *Insured* participated, aided or abetted in a civil conspiracy.

(b) *Bodily Injury/Property Damage*: Any *Claim* based on or arising from *Bodily Injury* or *Property Damage*, but this exclusion shall not apply to any *Claim* seeking *Damages* for humiliation or emotional distress based upon allegations of *Defamation*.

(c) ***Claims* By An *Insured*:** Any *Claim* made by an *Insured* against an *Insured*.

(d) *Insured* **Acting In Another Capacity:** Any *Claim* in connection with or arising out of the service of any *Person*, who is an *Insured*, acting as an employee, officer or director of any company, business, entity or charitable organization other than the *Named Insured*.

(e) **Employment Practices Liability:** Any *Claim* in connection with or arising out of any *Insured's* employment obligations, decisions, practices or policies as an employer, including, but not limited to, acts of discrimination, humiliation or harassment and acts in violation of the Americans with Disabilities Act.

(f) **Other Business Entities:** Any *Claim*, whether or not related to *Professional Services*, made by, in the right of, against, in connection with or arising out of any entity not named in the Declarations in which:

1. any *Person* who is an *Insured* (or an *Affiliate* or *Related Individual* of that *Person*) is or was at any time managing, controlling or operating the entity; or
2. the aggregate ownership of all *Persons* who are *Insureds* (including *Affiliates* and *Related Individuals* of such *Persons*) at any one time was or is more than twenty percent (20%).

(g) ***Claims* Seeking Return of *Insured's* Fees:** That part of any *Claim* seeking the return of or reimbursement of fees for *Professional Services*.

(h) **Punitive or Exemplary Damages:** Indemnity of any punitive or exemplary damages, fines, sanctions or penalties, unless required by law.

(i) ***Claims* Following *Insured's* Suit For Fees:** Any *Claim* made by any *Person* after an *Insured* has sued such *Person* (or *Affiliate* of such *Person*) to obtain payment of fees for *Professional Services*, unless that *Insured* has consulted with the Company prior to filing the suit. This exclusion does not eliminate coverage for any *Claim* made after an *Insured's* use of arbitration or mediation to resolve a fee dispute with the *Person* making the *Claim*.

(j) **Products Liability:** Any *Claim* in connection with or arising out of the use of, or existence of any condition in or a warranty of, products sold or distributed by an *Insured*.

## V. *INSURED'S* RIGHT TO *EXTENDED REPORTING COVERAGE*

A. *Extended Reporting Coverage*

The *Named Insured* may purchase *Extended Reporting Coverage*, as described below, because of any of the following Events:

1. A *Named Insured* who is a sole proprietor becomes *Retired* or *Permanently Disabled,* or a two-professional firm's business is *Discontinued* because one of the professionals becomes *Retired* or *Permanently Disabled;*

2. A *Named Insured* who is a sole proprietor dies, or a two-professional firm's business is *Discontinued* because one of the professionals dies; or

3. The Company cancels or non-renews this Policy for any reason other than non-payment of premium, and there are no amounts owed by the *Named Insured* to the Company, including sums due for premium or Deductibles.

The Company will determine the premium for *Extended Reporting Coverage* upon receipt of the *Named Insured's* request. The Limits of Liability for the *Extended Reporting Coverage* are separate from and shall not exceed the Limits of Liability of the last policy in effect.

**B. Retirement, Permanent Disability, or Death – Unlimited Period**

1. If a firm is *Discontinued* for reasons described in paragraphs A.1 or A.2, above, then within 30 days of such discontinuation the *Named Insured* or the deceased *Insured's* estate has the right to purchase unlimited *Extended Reporting Coverage* for *Claims* first made against the *Named Insured* and reported to the Company after the end of the *Policy Period* arising out of any negligent act, error or omission occurring prior to the end of the *Policy Period* and otherwise covered by this policy.

2. Extended Reporting Coverage under this Section V.B is not available if the right to *Extended Reporting Coverage* is available and is purchased by the *Named Insured* under Section V.C, below.

**C. Non-Renewal or Cancellation – Three Year Period**

1. If this policy is cancelled or non-renewed by the *Named Insured* or by the Company for any reason described in paragraph A above, within 30 days the *Named Insured* has the right to purchase *Extended Reporting Coverage* for a three-year period for *Claims* first made against an *Insured* and reported to the Company after the end of the cancelled or non-renewed *Policy Period* arising out of any negligent act, error or omission occurring prior to the end of the *Policy Period* and otherwise covered by this policy.

2. *Extended Reporting Coverage* under this Section V.C is not available if the right to *Extended Reporting Coverage* is available and is purchased by the *Named Insured* under Section V.B, above.

**D. Right of *Qualifying Partner* to Purchase *Extended Reporting Coverage***

If the *Named Insured* fails, or has no right, to purchase *Extended Reporting Coverage,* any *Qualifying Partner* may purchase *Extended Reporting Coverage* providing coverage solely to the *Qualifying Partner.* The *Named Insured* is responsible for notifying any *Qualifying Partner(s)* of any change in the *Named Insured's* coverage.

**E. Additional Definitions Applicable to This Section**

1. *"Retired"* means the *Insured*: (a) has reached age 55, and (b) has completely ceased providing *Professional Services.*

2. *"Permanently Disabled"* means the *Insured* is medically judged to be totally and permanently unable to provide *Professional Services,* and has sold or discontinued his/her certified public accounting practice as a result of the disability. Proof of such disability must be provided upon the Company's request.

3. The business of a two-professional firm is *"Discontinued"* when: (a) both professionals are *Retired*, are *Permanently Disabled* or have died, or (b) one professional has *Retired*, has become *Permanently Disabled* or has died, and the other professional has sold the firm's business to an unrelated party.

4. A *"Qualifying Partner"* is a former partner or shareholder, or his/her legally appointed representative, who was not a partner or shareholder of the *Named Insured* on the date the right to purchase Extended Reporting Coverage lapsed or on the date unpaid premiums or other amounts became due to the Company from the *Named Insured*.

## VI. POLICY CONDITIONS

**A.** *Insured's* **Duties Upon Notice of** *Claim* **or** *Potential Claim*

1. As a condition precedent to coverage, an *Insured* must promptly notify the Company or its authorized representative of any *Claim* or *Potential Claim*, and include the following information, if available:

   (a) The name and address of the claimant or potential claimant, and all other involved individuals;

   (b) A description of the *Professional Services* provided, or that should have been provided, and the *Damages* that may result;

   (c) The *Insured's* explanation of why the *Claim* was made or why the *Potential Claim* may become a *Claim*;

2. An *Insured* must:

   (a) Upon receipt of a *Claim*: (i) immediately send to the Company copies of any demands, notices, summonses or legal papers received in connection with the *Claim*; (ii) authorize the Company to obtain records and other information; and (iii) cooperate with the Company in the investigation, defense, and settlement of the *Claim*.

   (b) Upon request, assist the Company in enforcing any right against any *Person* that may be liable to an *Insured* because of *Damages* to which this insurance applies.

   (c) Refuse, except at the *Named Insured's* own cost, to admit any liability, assume any *Damages*, voluntarily make any payments, or incur any *Claim Expenses*.

3. The Company will pay the *Named Insured* a per diem of $300.00 per day, up to a maximum payment of $6,000.00 per *Claim*, to compensate an *Insured* for attendance at mediation, arbitration or trial proceedings at the Company's request.

**B. Innocent Insured**

1. If coverage for a *Claim* would be void, excluded, suspended or lost as a result of any *Insured's* acts, errors or omissions excluded from coverage by Section IV. Exclusions, A. Intentional Misconduct, then this Policy's coverage will continue to apply to any innocent *Insured* who did not personally commit, participate, or acquiesce or remain passive after having personal knowledge of such acts, errors or omissions, provided that upon acquiring personal knowledge, the innocent *Insured* promptly gives notice to the Company in accordance with Section III. Insuring Agreements, A. Coverage for *Damages* and Reporting Requirements, and Section VI. Policy Conditions, A. *Insured's* Duties Upon Notice of *Claim* or *Potential Claim*.

2. If any coverage for a *Claim* would be void, excluded, suspended or lost by as a result of any *Insured's* failure to comply with the reporting requirements of Section III. Insuring Agreements, A. Coverage for *Damages* and Reporting Requirements, and Section VI. Policy Conditions, A. *Insured's* Duties Upon Notice of *Claim* or *Potential Claim*, then this Policy's coverage will continue to apply to any innocent *Insured* who did not fail to comply with the reporting requirements of this Policy, provided that:

   (a) the innocent *Insured* promptly gives notice to the Company in accordance with the provisions of Section III. Insuring Agreements, A. Coverage for *Damages* and Reporting Requirements, and Section VI. Policy Conditions, A. *Insured's* Duties Upon Notice of *Claim* or *Potential Claim*, and

   (b) the *Named Insured* is continuously insured by the Company through the date upon which notice is received by the Company.

3. These provisions do not extend coverage to any *Insured* when coverage is void, excluded, suspended or lost because of any other *Insured's* non-compliance with disclosure of information required on any policy application or policy renewal application.

C. **Transfer and Assignment of *Insured's* Rights and Duties**

1. No *Insured* may transfer or assign any *Insured's* rights or interest in, or duties under, this policy without the Company's written consent.

2. If the Company makes any payment for *Damages* and/or *Claim Expenses*, it shall be subrogated to all of the *Insured's* rights of recovery against anyone, and the *Insured* shall do whatever is necessary to secure such rights. After becoming aware of a *Claim* or a *Potential* Claim, no *Insured* shall do anything to prejudice the Company's subrogation rights.

3. Any monetary recoveries will be distributed between the *Named Insured* and the Company in proportion to the amounts paid by the *Named Insured* within the Deductible – Per *Claim* and by the Company within the Limits of Liability.

D. **Legal Action Against the Company**

1. No *Insured* shall seek to join the Company as a party to a suit that seeks *Damages* from an *Insured* or sue the Company unless: (a) all of the terms and conditions of this policy have been met, and (b) the amount of the *Insured's* obligation to pay *Damages* has been finally determined either by judgment against the *Insured* after an actual contested trial or by written agreement of the *Insured* and the claimant with the prior written consent of the Company.

2. If an *Insured* and the Company dispute whether this policy provides coverage for a *Claim*, all *Insureds* agree that the parties will meet with a qualified mediator in a good faith effort to negotiate a resolution of the dispute prior to the initiation of any legal proceeding. The mediation will continue until the dispute is resolved, or until the mediator notifies the parties that it is unlikely that the dispute will be resolved through mediation, or until any party elects to end the mediation after a minimum of thirty (30) days after the first mediation session.

E. **Other Insurance**

This insurance shall be excess over any other valid insurance available to any *Insured*, whether such insurance is stated to be primary, contributory, excess, contingent or otherwise. However, this condition does not apply if the other insurance was purchased specifically to apply in excess of this insurance and identifies this policy as primary insurance.

F.  **Cancellation or Non-Renewal**

The Company may cancel this policy for any reason consistent with state law, as described in the State Endorsement issued with this policy.

The *Named Insured* may cancel this policy by written notice to the Company accompanied by surrender of the policy to the Company or any of the Company's authorized agents, or by mailing written notice to the Company at the location stated in an endorsement issued with this policy. The written notice must state the date on which the *Named Insured* requests cancellation to become effective. The mailing of notice by the *Named Insured* shall be sufficient proof of notice. The time of surrender shall become the end of the *Policy Period*. Delivery (where permitted by law) of such written notice by the *Named Insured* shall be equivalent to mailing.

G.  **Change in Membership or Name of Firm**

The Company has the right to assess and charge an additional premium if, in the reasonable judgment of the Company, there is a significant increase in the size or other risk characteristics of the *Named Insured*.

H.  **Bankruptcy**

The bankruptcy or insolvency of the *Named Insured* will not relieve the Company or any *Insured* of any obligations under this policy.

I.  **Mutual Policy Provisions: Dividends, Voting, Policy Non-Assessable**

1. The *Named Insured* is a member of the Company and shall participate in the distribution of dividends fixed and determined by the Board of Directors.

2. The *Named Insured* is entitled to vote, either in person or by proxy, at all meetings of the Company, pursuant to the Bylaws and Articles of Incorporation of the Company.

3. This policy is not assessable.

J.  **Entire Contract**

By accepting this policy, each *Insured* agrees that the statements in the Declarations and in each application for renewal or supplementary application are his/her agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between each *Insured* and the Company or any of its agents relating to this insurance.

**IN WITNESS WHEREOF**, the Company has caused this policy to be signed by its President and a Secretary and countersigned on the Declarations page by a duly authorized representative of the Company.

**PRESIDENT**                                           **SECRETARY**